Lovejoy v. Jones

---

---

## LOVEJOY v. JONES.

The sale of a chattel, by one who has borrowed it for an indefinite period, terminates the bailment, and makes his possession tortious; and the purchaser, on delivery, and taking control of it and using it as his own property, becomes liable to the owner for having converted the same to his own use.

No demand is, in such case, necessary to complete the evidence of conversion.

A demand by the attorney of the plaintiff, by a letter actually received by the defendant before the action is brought, is a sufficient demand, if any be requisite.

The provision in section 32 of chapter 181 of the Compiled Statutes, empowering parties on trial by the jury to make their adversaries witnesses in chief, relates to such cases only, as have been tried before commissioners.

TROVER, for an ox. It appeared that the plaintiff owned the ox, and lent it to one McCoy, to use at Manchester; that while McCoy had it he sold it to the defendant, in February,

1853, and took his note for the same, representing himself to be the owner.

The writ was dated May 28th, 1853, and was made out at Concord. The plaintiff, to prove a demand for the ox, introduced evidence tending to show that in October, 1853, the defendant came to see the plaintiff, with a view to settle up the matter; that while together, the plaintiff told him that he might have settled with less trouble at Manchester, and asked him if he did not receive a letter requesting him to return the ox, or settle for it; and he said he did, from Herman Foster, Esquire, at Manchester, in March or April, 1853; she said she supposed he had written to that effect. He said he thought he had bought the ox and paid for it, and that he should not do any thing more about it till he knew to whom it belonged.

It appeared that the defendant took the ox into his possession immediately on making the bargain for it with McCoy, and had always thereafter used it as his own.

The defendant's counsel excepted to the evidence as incompetent to show a demand for the ox and as incompetent to show a conversion of the property, but the court overruled the exception.

The defendant moved the court that the plaintiff be required to take the stand and testify as a witness in chief on the trial, which, the defendant contended, was his right to have done, under the provisions of the statute of January 7, 1853. It appeared that the plaintiff was not in court, and that she was an old lady. The court overruled the motion, and the defendant excepted.

The jury returned a verdict for the plaintiff, which the defendant moved to set aside, for alleged error in the rulings of the court.

*Rolfe & Marshall*, for the defendant.

I. McCoy was rightfully in possession of the ox, and had the loan of the same for an indefinite period, and the defen-

dant purchased and paid for the ox, in good faith, and the taking was without tort.

The plaintiff, in order to be able to maintain her action, was bound to terminate the loan by a demand. *Fairbanks* v. *Phelps*, 22 Pick. 535; *Wheeler* v. *Train*, 3 Pick. 258; *Ayer* v. *Bartlett*, 9 Pick. 156.

The using or working the ox is not evidence of conversion, as the defendant exercised no illegal control over him, inconsistent with the plaintiff's right of property, McCoy's loan being for an indefinite period. *Woodman* v. *Hubbard*, 5 *Foster*, 71.

The mere purchase of goods, in good faith, from one who has no right to sell them, is not conversion against the lawful owner till his title has been made known and resisted. 2 Greenl. Ev. § 643; *Mc Combie* v. *Davis*, 6 East 538; *Baldwin* v. *Cole*, 6 Mod. Rep. 212.

II. As the case finds, evidence was introduced tending to show a demand, yet the defendant was unable to ascertain to whom the ox belonged, or who claimed the same.

If the plaintiff was obliged to make a demand at all, it should have been direct and explicit, not ambiguous and uncertain; the refusal positive and absolute, not merely evasive. 2 Saund. Pl. & Ev. 883; 2 Greenl. Ev. 604, 605, and authorities there cited.

III. The defendant had a right to put the plaintiff upon the stand to testify as a witness in chief. Comp. Stat. ch. 181, § 32; Pamph. Laws, ch. 1280, § 4.

Said fourth section provides that the commissioners shall have power, upon the request of either party, to examine the other party as a witness in chief.

And it is further provided that, upon the request of either party, the other party may be examined as a witness in chief at *any* trial by jury.

The case finds that the plaintiff was and is an old lady, (some fifty years of age,) but the fact that she is a lady and somewhat advanced, clearly cannot take away the defen-

dant's right to her testimony, which, he says, would have at once settled all questions in controversy.

The right to put the plaintiff upon the stand is as absolute in the defendant as the right to trial by jury ; but the discretionary power vested in the court is to continue the case till the plaintiff or defendant, if for any sufficient reason, either of them is unable to testify when the case is in readiness for trial, is relieved of such disability.

*Baker & Peabody*, for the plaintiff.

I.   The defendant could not of right demand that the plaintiff should take the stand and testify as a witness in chief.   No such rule prevails at common law, nor is it sanctioned by statute.   The motion is based upon chapter 181, section 32, of the Compiled Laws.   But that section alludes to those cases only which have been referred to commissioners under that act.

The section provides, first, for the examination of either party, at the request of the other, upon the trial before the commissioner; aßd second, for the examination of either party, at the request of the other, upon a trial by jury.

Taking the whole section together, and using the ordinary rules of construction, it is plain that the second paragraph refers to the same " party " as the first, that is, to a party who has been before a commissioner under the act.

The motion, even if competent to be made, is one addressed to the discretion of the court.   It is for the court to say whether, under all the circumstances of the case, the party shall take the stand as a witness or not.   In this case, " it appeared that the plaintiff was not in court, and that she was an old woman."   No delay or continuance was asked, in order to procure her attendance, and the court, exercising a sound discretion, refused to grant the motion.

II.   There was evidence upon which the jury might find a demand and refusal.   The defendant admitted to the plaintiff that he received a demand from Mr. Foster, the attorney, to

return the ox or settle for it, and this before the suit was brought; and the defendant proceeded to explain to the plaintiff why he did not comply with the demand. It is admitted that he has never returned the ox or settled for it.

But there was no necessity for proof of a demand and refusal; for the taking and using the ox as his own, by the defendant was, of itself, a conversion. Taking the property of another by assignment, from one who had no authority to dispose of it, is a conversion.

In *Hyde* v. *Noble*, 13 N. H. Rep. 499, *Parker*, C. J. says: " Purchasing the property from one who had no right to sell, and holding it to their own use, is a direct act of conversion, without any demand or refusal." *Lothrop* v. *Blake*, 3 Foster's Rep. 57 ; *Mc Combie* v. *Davis*, 6 East 538.

Every assuming by one person to dispose of the goods of another, as if they were his own, is a conversion. 9 Bac. Abr. (by Bouvier) 631 ; 2 Saund. Pl. & Ev. 1157 ; *Gomesdale* v. *Medgate*, Yelv. 194; 2 Saund. 47, e.; *Stephens* v. *Elwell*, 4 M. & S. 259 ; *Tompkins* v. *Haile*, 3 Wend. 406 ; *Bates* v. *Conkling*, 10 Wend. 391; *Reynolds* v. *Shuler*, 5 Cowen 326, and cases there cited ; *Murray* v. *Burling*, 10 Johns. 175.

Whoever takes the property of another, without his assent, express or implied, takes it, in the eye of the law, tortiously. *Galvin* v. *Bacon*, 2 Fairf. 30. And a tortious taking is, of itself, a conversion. 2 Saund. Pl. & Ev. 1156 ; *Davis* v. *Webb*, 1 McCord 213 ; *Farrington* v. *Payne*, 15 Johns. 431 ; *Woodbury* v. *Lang*, 8 Pick. 543; also cases previously cited.

" Using a thing, without license of the owner, is a conversion." 2 Greenl. Ev. § 642 ; *Clark* v. *Whitaker*, 19 Conn. 319; *Sparks* v. *Purdy*, 11 Miss. Rep. 219 ; *Liptrol* v. *Holmes*, 1 Kelly 381 ; *Hutchinson* v. *Bobo*, 1 Bailey 546 ; *Ried* v. *Colcock*, 1 N. & M. 592. The wearing of a pearl is a conversion. *Lord Peter* v. *Heneage*, 12 Mod. 519.

WOODS, C. J.   McCoy's possession of the ox for a period not fixed by the contract of bailment, was terminable at the will of the plaintiff, or by any act of his own that should indicate a purpose of putting an end to the character or relation of bailee, in which he held the chattel.   The act of sale was of that nature.   It changed the nature of his possession from that of a bailee to that of a wrong-doer, ( *Sanborn* v. *Coleman*, 6 N. H. Rep. 14,) and the delivery to the defendant under the sale, gave him no better or more rightful title to it. It was not one of those cases in which one, holding the chattel of another, can confer a better title than his own, as against the real owner, by reason of any power involved in the nature of the trust and confidence reposed.

The chattel was lent to McCoy, and he had no authority to put it into the hands of another, for any purpose inconsistent with that tenure of it.

The purchase and use of the chattel by the defendant amounted to a conversion, according to all the authorities, and no further evidence was required to lay the foundation for an action of trover.   *Hawkins* v. *Doty*, 6 N. H. Rep. 247 ; *Hyde* v. *Noble*, 13 N. H. Rep. 494.

But a demand, if required, is sufficiently proved to have been made by Mr. Foster, in behalf of the plaintiff, before the action was commenced, by the clear admission of the defendant.   *White* v. *Demary*, 2 N. H. Rep. 546, and authorities there cited.

By chapter 181 of the Compiled Statutes, provision is made for referring actions to commissioners, and the powers and duties of the commissioners, in such cases, are defined.

By section 32 of that chapter, power is given the commissioner, upon the request of either party, to examine the other party, as a witness in chief ; and " upon the request of either party, the other party may be examined as a witness in chief at any trial by jury." The section next following designates the conditions upon which the case may be tried by jury.

The whole of the chapter from section 29 to section 37, in-

clusive, relates to the subject of referring actions to commis-sioners, and to proceedings consequent upon such reference, and to no other subject whatever, and to no other actions except such as may be so referred, unless the clause cited from the 32d section be considered to form an exception.

We think that such is not the case, and that it must be taken to refer to the subject-matter of the context exclu-sively.

We think it could scarcely have been the intention of the Legislature to distinguish a chapter having for its principal object to make provision for the trial of causes before com-missioners, by the interpolation of a single sentence, chang-ing an ancient and well established and highly important rule of evidence. Nor do the words of the statute demand any such construction. The section describes the terms upon which parties may be required by their opponents to testify as witnesses in chief, in actions actually referred to commissioners.

By referring the action to the commissioner, the parties are liable to be made witnesses by their opponents. Upon a subsequent trial before the jury, it seemed reasonable that the same evidence should be accessible to the parties as be-fore ; and that a party having once tried the effect of a dis-covery, should not, if disappointed in its results, enjoy the privilege of a second trial without the prejudice that might result from his omission to lay the same before the jury. And that a party, having lost his case before the commis-sioner, by reason of his own discovery, should not, by ap-pealing to a jury, stand upon better ground. The statute has plainly gone thus far in changing the rules of evidence, but we think it was not designed to change the rule as ap-plicable to other forms and modes of trial.

We think that on both points made in the case, the ruling of the court was correct, and there must accordingly be

*Judgment on the verdict.*